UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PENELOPE A. HULL,                  :        Case No. 1:08-cv-804
                                   :
         Plaintiff,                :        Judge Herman J. Weber
                                   :        Magistrate Judge Timothy S. Black
vs.                                :
                                   :
COMMISSIONER OF                    :
SOCIAL SECURITY,                   :
                                   :
         Defendant.                :


**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-
DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL
EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

        This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

unentitled to supplemental security income ("SSI") and disability insurance benefits

("DIB").  (*See* Administrative Transcript ("Tr.") (Tr. 53-59) (ALJ's decision)).

**I.**

        On December 16, 2002, Plaintiff filed an application for SSI and DIB alleging that

she became disabled on December 1, 2002, due to bilateral knee osteoarthritis (right

greater than left), carpal tunnel, and depression.  (Tr. 23, 113, 112-115).

        Upon denial of her claims on the state agency levels, she requested a hearing *de*

_____

        [1] Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

*novo* before an ALJ. A hearing was held on March 15, 2005, at which Plaintiff appeared with counsel and testified. (Tr. 587-618). A vocational expert, Kenneth Manges, was also present and testified. (Tr. 621)

On August 16, 2005, the ALJ entered his decision finding Plaintiff not disabled because she had the residual functional capacity ("RFC") to perform a range of sedentary work. (Tr. 23-32, 50-63). On August 24, 2005, Plaintiff appealed the ALJ's denial to the Appeals Council. (Tr. 92). On October 28, 2005, following the ALJ's first denial, Plaintiff filed a new application for SSI and DIB. (Tr. 144-149, 574-576).

On February 25, 2006, Plaintiff was granted benefits on the newly filed claim with an onset date of August 16, 2005. (Tr. 93-94). On August 11, 2006, the Appeals Council remanded the first claim in order for the ALJ to obtain additional information, including evidence from a medical expert. (Tr. 65-68).

Because the ALJ's denial and the new favorable determination occurred within 12 months of one another, the Appeals Council reopened the determination on the second claim, and allowed the ALJ to resolve the difference in opinion of the determinations. (Tr. 66).

At the time of the remand hearing, Plaintiff was a 53 year old female with a high school education. (Tr. 138-142). Her past relevant work experience was as a factory worker, janitorial worker, stocker, and as a receptionist for a taxi company. (*Id.*)

On January 18, 2007, the ALJ issued another unfavorable decision, determined

that the second application was incorrect, and found that Plaintiff was not disabled at any time from December 2002 to the date of this denial.  (Tr. 20-32).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(a) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in any substantial gainful activity since her alleged onset date.

3.  The claimant's obesity, osteoarthritis of the knees, degenerative disc disease of the lumbar spine, and depression (as of January 2006) are considered "severe" based on the requirements in the Regulations.  She does not suffer from any other severe impairments.

4.  The claimant's impairments (singly or in combination) do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of this decision.

6.  The claimant has the residual functional capacity for a range of sedentary work, as set forth in the body of this decision.  As of January 2006, mentally she is limited as set forth in Exhibit 20F/7-0.

7.  The claimant's past relevant work as a taxi company receptionist did not require the performance of work-related activities precluded by her residual functional capacity.

8.  The claimant's medically determinable obesity, osteoarthritis of the knees, degenerative disc disease of the lumbar spine, and depression do not prevent her from performing her past relevant work.

9.    The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision.

10.   The claimant's subsequent applications are revised and reopened and she has not been disabled at any time on or prior to the date of this decision.

(Tr. 31-32).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI or DIB.  (Tr. 32).

On appeal, Plaintiff argues that: (1) the ALJ erred in determining her RFC and discrediting her treating physician; (2) the ALJ erred in finding that she was not credible (including failing to consider all of her impairments, including her back and pain issues regarding leg elevation); (3) the ALJ erred in not considering her carpal tunnel impairments and limitations; and (4) the ALJ erred in not considering her psychological effects on the job base.  Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon

which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## A.

For her first assignment of error, Plaintiff maintains that the ALJ erred in determining her RFC and discrediting her treating physician.

The relevant medical record reflects that:

Plaintiff has long suffered from knee and hip pain after a work injury for which she received Worker's Compensation until 1997.  (Tr. 112).

Plaintiff applied for DIB and SSI in December 2002.  (Tr. 23).[2]  Dr. DeGreg's

---

[2]    Plaintiff did not, however, see her primary care physician, Dr. DeGreg, from December 1999 to February 2003.  (Tr. 227-28).

records repeatedly evidence Plaintiff's complaints of pain in her knees, back, and legs. (Tr. 225-234, 252-280, 296-333).  In February 2003, she saw Dr. DeGreg in order to have welfare-related paperwork completed, and also mentioned that she was applying for Medicaid and SSI.  (Tr. 228).  Her complaint was bilateral knee pain secondary to her 1997 injury.  (Tr. 228, 230).  Dr. DeGreg also noted her weight at 221 pounds.  (*Id.*)  In March, Dr. DeGreg referred her to an orthopedist.  (Tr. 233).

In April, orthopedic surgeon Dr. Sheridan examined Plaintiff in connection with her DIB and SSI applications.  (Tr. 235).  He noted that she limped and had difficulty moving around, but used no assistive device.  (Tr. 236).  He found reduced range of motion in her right knee, and x-rays showed moderate arthritis and a severe deformity in the right knee.  (Tr. 239-40).  He also found mild changes in Plaintiff's left knee, with full range of motion.  (Tr. 239).  He found no limitations with respect to her hand functioning. (Tr. 236-37, 241).  He diagnosed Plaintiff with bilateral osteoarthritis and bilateral varus deformities, worse on the right, and limited Plaintiff to sedentary work for one hour.  (Tr. 240).

In May, state agency physician Dr. Thompson assessed Plaintiff's physical abilities.  (Tr. 247).  He found that she could do sedentary work with a sit/stand option, and was limited in her use of foot controls.  (Tr. 247-48).  He also felt that she should never kneel, crouch, crawl, or climb ladders, ramps or scaffolds, and only occasionally climb ramps and stairs.  (Tr. 248).  He also noted that Dr. Sheridan's findings did not

correspond to his limitation of sedentary work for only one hour. (Tr. 250).

In June, Plaintiff saw orthopedist Dr. Sailer who found bilateral knee osteoarthritis after examination and x-rays. (Tr. 254). The x-ray was compared to film from 2000, and no significant progression was identified. (Tr. 256). He recommended conservative treatment with pain medication and injections, and raised the possibility of replacement surgery. (Tr. 254). Also in June, Plaintiff complained to Dr. DeGreg of numbness in her hands and feet, and stated that it occurred every two or three days and lasted for about ten minutes. (Tr. 234). Plaintiff continued to complain of knee pain to Dr. DeGreg in August and October. (Tr. 259-60). Plaintiff complained of knee pain and indicated an interest in surgery in December. (Tr. 293).

In January 2004, Dr. DeGreg opined that Plaintiff could sit for four to six hours in a day, and for thirty to sixty minutes at a time; stand/walk for thirty minutes to sixty minutes total, and for fifteen minutes at a time; frequently carry up to ten pounds; and could not do repetitive foot movements without limitation. (Tr. 265). She found that Plaintiff was not significantly limited in her ability to use her hands. (*Id*.) She indicated that she expected Plaintiff's limitations to last no more than nine months. (*Id*.) Dr. DeGreg prescribed Vicodin for Plaintiff's knee pain during the year, and also Celebrex for a short period. (Tr. 299-300, 302, 305, 333).

In April, Plaintiff went to the emergency room with a complaint of back pain after playing with her grandchild "a lot;" x-rays were negative. (Tr. 336-37). In July, Plaintiff

complained of low back pain after picking up her granddaughter. (Tr. 303). Also that month, Plaintiff complained of depression. (Tr. 302). In August, she asked for Zoloft, and she was advised to see a psychiatrist by the nurse. (Tr. 301). In October, she complained of depression and Dr. DeGreg prescribed Zoloft. (298-99).

In February 2005, Plaintiff said Prozac was helping with her depression (she had stopped taking Zoloft due to its side effects). (Tr. 297-98). She also stated that Vicodin helped her leg pain. (Tr. 297). She saw Dr. DeGreg throughout the year, but not always with knee complaints. (Tr. 366, 369, 390-98).

In April, nerve conduction studies indicated bilateral carpal tunnel syndrome, greater on the right. (Tr. 355). In her April 6, 2005 RFC, Dr. DeGreg diagnosed Plaintiff with arthritis, carpal tunnel syndrome, depression, and HTN. (Tr. 350-354). Also that month, Dr. DeGreg opined that Plaintiff could: (a) sit for one hour at a time, and for about four hours total; (b) stand/walk for about fifteen minutes at a time, and for less than two hours total; (c) not work without a sit/stand option or the ability to take unscheduled breaks (about three every hour); (d) not sit for prolonged periods without elevating her leg about 50% of the time; (e) occasionally lift ten pounds; (f) never stoop, crouch, or climb ladders; (g) rarely climb stairs; (h) not use her hands and fingers more than 25%-50% of the time for certain tasks; and (i) miss more than four days of work every month. (Tr. 350-54). Dr. DeGreg felt that Vicodin could cause drowsiness and that Plaintiff's pain would frequently interfere with her attention and concentration. (Tr. 351). She cited

Plaintiff's arthritis, carpal tunnel syndrome, depression (which she described as not well controlled) and hypertension. (Tr. 350-51).

X-rays of Plaintiff's knees in May showed progressive worsening when compared to her x-rays from 2003 (Tr. 445), and she had right total knee replacement surgery in June (Tr. 438). In August, x-rays of Plaintiff's right knee "looked good," but her Vicodin prescription was refilled. (Tr. 385). In October, Plaintiff reported popping in her right knee. (Tr. 382, 504). X-rays were normal (Tr. 506A), and her orthopedic exams were normal except for some tenderness in her thigh, and no clicking or popping was noted. Nonetheless, Plaintiff was advised to go to physical therapy. (Tr. 382, 504).

In November, an MRI revealed moderate disc herniations at two levels, with mild to moderate left foraminal stenosis at one level, as well as mild facet arthropathy at two levels. (Tr. 381). Plaintiff started physical therapy in December. (Tr. 484).

In January 2006, Plaintiff again complained of her knee giving out. (Tr. 468). Again, x-rays were normal, and her orthopedist found no significant instability on examination. (*Id.*) Also in January, psychologist Dr. Leisgang examined Plaintiff in connection with her second DIB and SSI applications. (Tr. 410). She diagnosed Plaintiff with depression and posttraumatic stress disorder, and assigned her a Global Assessment of Functioning ("GAF") score of 41.[3] (Tr. 414). Dr. Leisgang found mild to serious impairments in her abilities to relate to others; to understand, remember and follow

---

[3]  A GAF score of 41-50 indicates severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifitng) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).

simple instructions; to maintain attention, concentration, persistence and pace; and withstand the stress of every day work.  (*Id*.)

The following month, state agency psychologist Dr. Goeke concluded, based mostly on Dr. Leisgang's opinion, that Plaintiff's mental impairments substantially limited her ability to sustain normal work or perform at a competitive pace.  (Tr. 64, 435). He found moderate limitations in her activities of daily living and her ability to maintain social functioning, as well a marked limitation in her ability to maintain concentration, persistence and pace.  (Tr. 429).

Also in February, Plaintiff went to the emergency room with back pain, and reported that she had gotten better after her 2005 MRI, but had recently had pain again. (Tr. 558).  On exam, Dr. Pangalos found only little tenderness, no radicular symptoms and objectively normal sensation in her legs, though Plaintiff did complain of pain during the exam.  (*Id*.)  An MRI revealed moderate left sided disc herniation at one level, impinging on the L5 nerve root and with mild central stenosis, as well as disc herniation at another.  (Tr. 559).  With input from neurological specialists, Dr. Pangalos recommended conservative treatment, including physical therapy.  (*Id*.)

Plaintiff terminated her physical therapy in early to mid-February after claiming that "another disc went out over the weekend."  (Tr. 484).  Plaintiff saw Dr. DeGreg in February, May, June, and August, but not always with back or knee complaints.  (Tr. 534-37, 539)

In June, x-rays of Plaintiff's back showed mild arthritis, disc space narrowing at

two levels, and slippage of one vertebra on another. (Tr. 473). Plaintiff saw Dr. McPherson in June for her back pain. (Tr. 508). She denied depression and anxiety, and also denied any numbness, tingling, or loss of power in her hands or arms. (Tr. 510, 517). Dr. McPherson opined that she had left sacroiliitis, and felt that her left-sided herniated disc was not responsible for her pain. (Tr. 508). During his examination, he found no abnormalities with respect to her arms. (Tr. 511-12). She refused his recommendation of steroid injections, so he recommended pain medication. (Tr. 508).

In September, psychiatrist Dr. Eggerman examined Plaintiff in connection with her DIB and SSI applications. (Tr. 524). Plaintiff denied mental illness but reported being depressed; she also indicated that Effexor made her feel better. (Tr. 525). She said she was able to complete all household chores, but that it took her twice as long as normal. (Tr. 527). Dr. Eggerman noted a normal gait. (*Id.*) He diagnosed her with dysthmia, and assigned her a GAF score of 60[4] and deduced that her highest recent GAF score had been 65.[5] (Tr. 528). He also stated that he did not detect any symptoms of post-traumatic stress disorder. (*Id.*) He found mostly minimal and mild limitations, and recommended mental health treatment, structured daily activities, and vocational rehabilitation. (Tr. 529).

---

[4]    A GAF score of 51-60 indicates some moderate symptoms OR any moderate difficulty in social, occupational, or school functioning.

[5]    A GAF score of 61-70 indicates some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

In October, Plaintiff complained of a three week history of right arm tingling, and increased depression. (Tr. 556).

In November, Dr. DeGreg issued another opinion about Plaintiff's abilities. (Tr. 543). She felt that Plaintiff could: (a) sit for one hour at a time, and for about four hours total; (b) stand/walk for about fifteen to twenty minutes at a time, and for about two hours total; (c) not work without a sit/stand option or the ability to take frequent unscheduled breaks; (d) occasionally lift ten pounds; (e) rarely stoop, crouch, or climb ladders or stairs; and (f) miss more than four days of work every month. (Tr. 544-46). Dr. DeGreg did not find Plaintiff limited in her use of her hands or fingers, and did not feel that Plaintiff needed to elevate her legs. (Tr. 545-46). She did not note any side effects from medication. (Tr. 544). She felt that Plaintiff's pain would frequently interfere with her attention and concentration. (Tr. 543). She cited Plaintiff's degenerative disc disease, arthritis, depression, hypertension, and COPD. (*Id.*) Dr. DeGreg estimated that on average Plaintiff would be absent from work as a result of her impairments or treatment more than 4 days a month. (Tr. 546).

Plaintiff testified that she suffered from knee pain that prevents her from standing or walking longer than 10-15 minutes at a time. (Tr. 598, 628). She also stated that she can only sit for about 10 minutes at a time before her legs go numb and she has to elevate them. (Tr. 599-600, 629). Regarding depression, Plaintiff testified that she cries all the time and wants to kill herself. (Tr. 602, 629). In addition, she testified that she had difficulty using her arms and hands because they frequently go numb, for which Dr.

DeGreg was setting her up for testing. (Tr. 604-605, 636). Plaintiff also stated that she could not do steroid injections because they made her very ill and she tried physical therapy, which helped her legs, but made her back hurt worse. (Tr. 626-27).

The ALJ discussed each of Dr. DeGreg's three opinions and why they were not well supported by objective medical evidence. (Tr. 30). *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004) (the ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record"). The ALJ noted that Dr. DeGreg's first opinion, from January 2004, indicated that Plaintiff's disability would only last up to nine months. (Tr. 265). This is not sufficient under the regulations, and was a good reason to discount the opinion. *See* 20 C.F.R. §§ 404.1505, 404.1509 (the Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which had lasted or can be expected to last for a continuous period of not less than <u>twelve months</u>.") (emphasis added).

The ALJ then described the deficiencies with Dr. DeGreg's second, April 2005, opinion. The ALJ found that it was inconsistent with Dr. DeGreg's first opinion. Specifically, Dr. DeGreg had reduced the time Plaintiff could sit, but did not provide any explanation for the change. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (the ALJ is not bound by the disability opinion of a treating

physician who provides conflicting opinions throughout the relevant time period). She also found that Dr. DeGreg did not justify any of her recommended limitations other than by listing Plaintiff's diagnoses. *See* 20 C.F.R. § 404.1527(d)(2).[6] Moreover, the ALJ noted that one of these diagnoses was carpal tunnel syndrome, which the ALJ had already found was not a severe impairment (*See Infra* Section II.C). (Tr. 28, 30).

Finally, the ALJ examined Dr. DeGreg's third opinion, and adopted it, other than with respect to the limitations on sitting (including the need for an sit/stand option). (Tr. 30). She explained, as she had earlier, that these limitations were inconsistent with the other evidence. (*Id.*) Indeed, Dr. DeGreg had originally found, when Plaintiff's knee condition was such that it required surgery, that she could sit for up to six hours a day, yet after the knee surgery, Dr. DeGreg found that she could sit for only four hours. (Tr. 265, 544). There was no evidence of deterioration of Plaintiff's condition - rather, the evidence showed that her knee was better after the surgery. Post-operative x-rays of her right knee were normal or "looked good" in August and October 2005 (Tr. 385, 506A), and in January 2006 (Tr. 468). On each of those occasions, her orthopedists found her knee to be normal other than for some thigh muscle tenderness. (Tr. 382, 504, 468). Also, Plaintiff reported in September 2006, that she could do all of her chores, though it took a longer period of time to complete. (Tr. 527). Additionally, Dr. Eggerman noted

---

[6]    Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1978). Mere diagnosis of a condition is not indicative of a disabling functional debilitation. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).

no antalgia in September 2006. (*Id.*) Therefore, substantial evidence existed which supported the ALJ's conclusion that Plaintiff did not require a sit/stand option.

Plaintiff claims that the ALJ erred in not accepting Dr. Sheridan's limitation of one hour of sedentary work. However, the ALJ pointed out that Dr. Sheridan's limitation was not supported by any objective evidence, a conclusion also reached by state agency physician Dr. Thompson. (Tr. 29, 250). It is also important to note that Dr. Sheridan's opinion came prior to Plaintiff's knee surgery.

Upon careful review, the undersigned finds that substantial evidence exists to support the ALJ's RFC.

## B.

For her next assignment of error, Plaintiff claims that the ALJ erred in finding that she was not credible (including failing to consider all of her impairments, including her back and pain issues regarding leg elevation).

The ALJ's assessment of credibility is entitled to great weight and deference, since she had the opportunity to observe the witness's demeanor. *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 852 (6th Cir. 1986) (any credibility determinations concerning subjective complaints of pain are the exclusive domain of the hearings officer).

> The assessment of a claimant's assertions of disabling pain is made in light of factors set forth in 20 C.F.R. § 404.1529, summarized in a two-part test:
> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine:
> (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

established condition is of such a severity that it can reasonably be
expected to produce the alleged disabling pain.

*Infantado v. Astrue,* 263 Fed. Appx. 469, 475 (6th Cir. 2008) (quoting *Felisky,* 35 F.3d at

1038-39).

In the instant case, the objective medical evidence does not confirm Plaintiff's

subjective complaints. "Whenever a claimant's complaints regarding symptoms, or their

intensity and persistence, are not supported by objective medical evidence, the ALJ must

make a determination of the credibility of the claimant in connection with his or her

complaints 'based on a consideration of the entire case record.'" *Rogers v. Comm'r of*

*Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (quoting SSR 96-7p, 1996 SSR LEXIS 4, at

*4 (July 2, 1996)).

The ALJ considered the record evidence, as well as the requisite credibility

factors.[7] However, Plaintiff's testimony and the record do not establish that pain prevents

her from performing sedentary work. *See also* 20 C.F.R. § 404.1529(c)(4) (the ALJ

considers whether there are inconsistencies in the evidence and any conflicts between the

claimant's statements and the other record evidence in determining the extent to which

the claimant's symptoms diminish her capacity for basic work activities).

The ALJ reasonably found that Plaintiff was not fully credible in light of the

record as a whole. The ALJ took Plaintiff's allegations - including that she had to elevate

---

[7]    These factors include: daily activities, medication taken to alleviate pain, treatment
other than medication for relief of pain, and measures you have used to relieve pain.  20 C.F.R.
§ 404.1529.

her legs for half the day (Tr. 633); that her leg popped out of place (Tr. 632); that she napped for three to four hours at a time daily (Tr. 634); that her whole arm went numb, and that her hands went numb for an hour at a time (Tr. 632, 635); that she had limited use of her hands (Tr. 609, 634-35), that she cried all the time and was suicidal (Tr. 629, 637); that her medication affected her speech (Tr. 632); and that her Effexor was not helping (Tr. 630) - and examined them against a backdrop of medical and other evidence that indicated that Plaintiff was overstating her limitations. *See* Social Security Ruling 96-7p (adjudicator must consider entire record in determining credibility). Additionally, although Plaintiff alleges disability since December 1, 2002, she was not under a doctor's care between December 1999 and February 2003.

Furthermore, Plaintiff alleged daily crying and feeling suicidal, but indicated that she had never received any mental health treatment beyond medication from Dr. DeGreg, who was her primary care physician. Such a disparity between Plaintiff's testimony and her medical history is significant. *See* 20 C.F.R. § 404.1529(c)(4). Indeed, although Plaintiff actively sought treatment for her physical impairments, she did not demonstrate a similar desire to address her allegedly significant emotional issues. In fact, Dr. McPherson noted that Plaintiff denied mental and emotional problems in June 2006 (Tr. 510), and upon examination by Dr. Eggerman, he found mostly minimal, mild, and no limitations. (Tr. 529). He noted that despite Plaintiff's lack of mental health care, she was functioning well - she indicated that she responded to Effexor, and he found that her most recent highest GAF was 65, which is indicative of mild symptoms. (Tr. 528). *See*

*Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) ("The medical evidence reflected that appellant's impairments were controlled with medication and were not seriously disabling"). In fact, Dr. Eggerman recommended mental health treatment, structured daily activities, and vocational rehabilitation. (Tr. 529). These findings are not consistent with the notion that Plaintiff is too limited to perform work-related activities.

It was within the ALJ's province to find, as she did, that Plaintiff's subjective complaints were inconsistent with her use of only mild medication, her sporadic course of medical treatment, and her daily activities. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988). The ALJ does not need to credit subjective complaints where there is no underlying medical basis for the complaint. *Fraley v. Sec'y of Health & Human Servs.*, 733 F.2d 437, 440 (6th Cir. 1984). When there are discrepancies between the claimant's testimony and the written record, the reviewing court does not substitute its credibility findings for that of the ALJ. *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). As Plaintiff's testimony conflicted with the objective medical evidence in the record, the ALJ did not commit reversible error by rejecting Plaintiff's testimony.

In any event, the VE testified that Plaintiff's past work as a receptionist did not require continual use of her hands - thus, even if the ALJ should have credited Plaintiff's testimony on this point, her step four finding would not have changed. *Shkabari v.*

*Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

## C.

For her third assignment of error, Plaintiff claims that the ALJ erred in not considering her carpal tunnel impairments and limitations.

The ALJ noted that after an April 2005 EMG revealed findings suggestive of carpal tunnel syndrome, that there are no further complaints until October 2006, when Plaintiff complained of a three weeks' history of numbness and tingling in the right arm. (Tr. 28). Dr. Sheridan found normal grasp and manipulation. (Tr. 235-240). In treating with Dr. McPherson, Plaintiff denied any loss of strength or power in the hands and

denied any tingling or numbness. (Tr. 511-20). In January 2004, Dr. DeGreg did not find any significant limitations on her ability to reach or handle. (Tr. 265), yet in April 2005 she opined that Plaintiff would have significant work-related limitations on handling and fine manipulations. (Tr. 350-57). In November 2006, Dr. DeGreg did not find any limitations on handling or fingering. (Tr. 543-551). The ALJ noted that there is no evidence of positive Tinel's or Phalen's testing.[8] (Tr. 28). Additionally, the ALJ found that if her hand impairment had been problematic, one would expect there to be some treatment history, yet Plaintiff has had no surgery, injections, and wears no splints. (*Id.*) Accordingly, the ALJ found that Plaintiff's description of the length and severity of hand problems was not credible and therefore could not be considered severe. (*Id.*)

Additionally, there was no support in the record for Plaintiff's statements about her hand and arm limitations. Plaintiff argues that the ALJ should have accounted for these in her RFC finding. However, the ALJ pointed out that while there was nothing in the medical evidence showing a diminished ability with her hands, that there was evidence from Dr. Sheridan of normal hand function (Tr. 236-37, 241), as well as evidence that Plaintiff had denied hand and arm limitations to Dr. McPherson, who likewise found no abnormalities with her arms (Tr. 28, 511-12, 517). Objective medical findings are a

---

[8]    Several simple tests can be done to elicit carpal tunnel syndrome symptoms to diagnose the disorder. Two common tests are called Tinel's and Phalen's Test. Tinel's test is performed by tapping the median nerve along its course in the wrist. A positive test is found when this causes worsening of the tingling in the fingers when the nerve is tapped. Phalen's test is done by pushing the back of your hands together for one minute. This compresses the carpal tunnel and is also positive when it causes the same symptoms you have been experiencing with your carpal tunnel syndrome.

mandated credibility factor. *See* 20 C.F.R. § 404.1529(c)(2). Indeed, even Dr. DeGreg agreed that Plaintiff had no handling or fingering limitations. (Tr. 517). Also, the fact that Plaintiff had not received any treatment after her diagnosis of carpal tunnel syndrome strongly suggested that she was not credible about her lack of fingering and handling abilities. (Tr. 628-29).

### D.

For her final assignment of error, Plaintiff maintains that the ALJ erred in not considering her psychological effects on the job base.

Plaintiff was initially found to be disabled as of August 16, 2005, due to Dr. Leisgang's one-time consultative evaluation, even though there was no real treatment history for psychiatric problems, except medication from a primary care physician. The ALJ found that Plaintiff did not have a severe mental impairment because Plaintiff did not have a psychological treatment history other than obtaining medications from Dr. DeGreg. In the state agency assessment that found disability, there was no mention if the impairment was expected to last 12 months at a disabling severity and Plaintiff had not gotten any additional treatment for her reported mental impairments after she was found to be disabled other than that she was on a waiting list to receive treatment (even though it was almost one year after the consultative evaluation was performed). (Tr. 29). Additionally, a current consultative evaluation performed by psychiatrist Dr. Eggerman, gave Plaintiff a GAF score of 60 - 65 (Tr. 524-532), indicating only mild limitations in social and occupational functioning (Tr. 29).

Moreover, although Dr. Leisgang diagnosed post-traumatic stress disorder based on Plaintiff's subjective complaints (Tr. 416-437), Dr. Eggerman noted that Plaintiff did not describe any symptoms of a post-traumatic stress disorder.  (Tr. 524-32).  Dr. Eggerman only found slight or minimal limitations on Plaintiff's ability to make judgments on simple work-related decisions and slight limitations in social functioning and responding to changes in the workplace and moderate limitations in her ability to deal with work-related pressures.  (*Id.*)  Additionally, in June 2006, Dr. McPherson reported that Plaintiff denied problems with depression, anxiety, or mental disturbance.   (Tr. 510).

Accordingly the ALJ found that Dr. Leisgang's assessment was inconsistent with the record as a whole, was primarily based upon Plaintiff's subjective complaints, and that Plaintiff did not make out a "severe" mental impairment prior to January 6, 2006. (Tr. 29).

## III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing.  The ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to supplemental security income and disability income benefits, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

**IT IS SO RECOMMENDED.**

Date:  <u>November 27, 2009</u>                    <u>s/ Timothy S. Black</u>
                                            Timothy S. Black
                                            United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PENELOPE A. HULL,                    :        Case No. 1:08-cv-804
                                     :
        Plaintiff,                   :        Judge Herman J. Weber
                                     :        Magistrate Judge Timothy S. Black
vs.                                  :
                                     :
COMMISSIONER OF                      :
SOCIAL SECURITY,                     :
                                     :
        Defendant.                   :

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 (1985).